McGuire agt. Sinclair.

# NEW YORK SUPERIOR COURT.

## JOHN McGUIRE agt. JOHN SINCLAIR and others.

*Conflict of evidence — question of fact — submission to jury — bona fide holder — promissory note.*

Where conflicting evidence on the trial is given in a question of fact, which it would be error to refuse to submit to the jury on a proper request to the court, the party omitting to make such request cannot take the objection on the hearing of the exception that the case should have gone to the jury upon that or upon any other question of fact there might be in the case.

The court will therefore decide the question of fact (a *bona fide* holder of commercial paper for value) on the weight of evidence given on the trial.

Where application was made to the plaintiff by one G. for a loan of money, and the plaintiff instead of the money gave G. a promissory note of another party, which he held, to get discounted at G.'s bank for the benefit of G., and G. without getting it discounted turned it out to the defendants, his creditors, before maturity, in part payment to them of an antecedent debt due from G., *held*, that the defendants were *bona fide* holders of the note for value.

*General Term, June,* 1872.

*Before* MONELL, CURTIS *and* SEDGWICK, *JJ.*

THIS action was tried before Mr. justice FREEDMAN and a jury on the 19th of February, 1872, and the plaintiff's complaint was dismissed.

The court ordered the plaintiff's exceptions to be heard in the first instance at general term.

*Hamilton Odell,* for plaintiff.

The plaintiff was the owner of a note for $1,200, made by Enoch Morgan's Sons, dated the 17th day of November, 1870,

McGuire agt. Sinclair.

and payable to the plaintiff's order in three months. Grant & Ascough were merchants, doing business in New York city. On or about November the twenty-second, Mr. E. B. Grant, one or the firm, applied to the plaintiff for a loan of money. The application resulted in the delivery to Grant of the note in question (indorsed in blank by plaintiff), upon his (Grant's) undertaking to have it discounted at his bank for the plaintiff—it being understood that, when discounted, the plaintiff would loan Grant & Ascough a portion of its proceeds. At this time Grant & Ascough were indebted to the defendants in a considerable sum, and Grant, having obtained possession of the note for the purpose above mentioned, at once transferred it to the defendants on account of such indebtedness, either as "security" or "instead of so much money." On December sixth, as soon as the plaintiff discovered what disposition had been made of the note, he notified defendants of his ownership thereof, and demanded its return; but defendants refused to deliver it up, and they subsequently transferred it to other parties.

The plaintiff received no value or consideration for the note from any party.

The complaint was dismissed by justice FREEDMAN, on the ground that there was no proof of a conversion of the note by the defendants.

*First.* Grant had no interest nor property in the note; it was intrusted to him for a special purpose; his transfer of it to the defendants was a fraud upon the plaintiff.

The defendants, therefore, were not entitled to retain it without proof by them that they were *bona fide* holders (*Bank of Cortland* agt. *Green*, 43 *N. Y.*, 298; *Farmers' Bank* agt. *Noxon*, 45 *N. Y.*, 762).

To constitute them *bona fide* holders they must have received it before maturity, and for value, and without notice of the plaintiff's title (*Small* agt. *Smith*, 1 *Denio*, 586; *Lawrence* agt. *Clark*, 36 *N. Y.*, 128).

It is admitted that they did receive it before maturity, and

without notice; so that the question in the case is, whether they were holders for value.

*Second.* The defendant, John Sinclair, was examined as a witness before trial. On his direct examination he testified, without qualification, that the note was delivered to defendants "*as security*" for money due to them from Grant & Ascough. A week later, at the close of his examination, being asked by his own counsel to explain his testimony upon this point, he said, " They gave it to us as so much money and we accepted it as such."

A man's declarations are always taken most strongly against himself; but even if this latter statement of the witness stood alone, and not in apparent opposition to his former one, it would fail to prove, what counsel claims for it, a partial payment of the precedent debt due from Grant & Ascough. It falls far short of proving an agreement by defendants to discharge Grant & Ascough's indebtedness *pro tanto*, and to look exclusively to the parties to the note for payment.

*Third.* It will not be claimed that, if the note was taken as security, the defendants were holders for value (*Fenby* agt. *Prichard*, 2 *Sand.*, 154; *White* agt. *Springfield Bank*, 3 *id.*, 222; *Stalker* agt. *McDonald*, 6 *Hill*, 93).

Neither were they, we say, if it was taken in part payment of the antecedent debt (*Harrington* agt. *Dorr*, 3 *Robt.*, 282; *Chesebrough* agt. *Wright*, 41 *Barb.*, 28; *Coleman* agt. *Lansing*, 4 *Lans.*, 71; *Schepp* agt. *Carpenter*, 49 *Barb.*, 542; *Lawrence* agt. *Clark*, 36 *N. Y.*, 128; *McBride* agt. *Farmers' Bank*, 26 *id.*, 454; *Lenheim* agt. *Wilmerding*, 55 *Pa.*, 73).

To constitute a *bona fide* holding of a note fraudulently diverted, as in this case, there must be a parting with value, a surrender of security, an extinguishment of a right, an incurring of liability, at the time the note is received and upon the faith of it; the holder must have done something to his own prejudice in consideration of the transfer of the note to him. It is then immaterial whether he receives it in payment of,

or as security for a precedent debt. All the cases agree upon this point (*Bank of New York* agt. *Vanderhorst*, 32 *N. Y.*, 553 [*affirming S. C.*, 1 *Robt.*, 216] ; *Park Bank* agt. *Watson*, 42 *N. Y.*, 490 ; *Chrysler* agt. *Renois*, 43 *N. Y.*, 209 ; *Farmers' Bank* agt. *Noxon*, 45 *N. Y.*, 762 ; *Brown* agt. *Leavitt*, 31 *N. Y.*, 114 ; *Pratt* agt. *Coman*, 37 *N. Y.*, 440 ; *Essex County Bank* agt. *Russell*, 29 *N. Y.*, 673 ; *Young* agt. *Lee*, 12 *N. Y.*, 551 ; *Montrose* agt. *Clark*, 2 *Sand.*, 117 ; *Webster* agt. *Van Steenburgh*, 46 *Barb.*, 212).

Here the defendants "relinquished no security or right on the faith of the note, nor did they part with anything or incur any risk in obtaining it " (*Lawrence* agt. *Clark*, 36 *N. Y.*, 130 ; *and see American Exchange Bank* agt. *Corliss*, 46 *Barb.*, 19).

*Fourth.* Therefore, the refusal of the defendants to ·surrender the note, and their negotiation of it to other parties after plaintiff's notification and demand, constituted a *conversion*, for which they are liable in this action (*Boyce* agt. *Brockway*, 31 *N. Y.*, 490 ; *Tolano* agt. *National Co.*, 5 *Robt.*, 326).

The exception should be sustained and a new trial ordered.

*Edward Patterson*, for defendants.

Prior to the 22d day of November, 1870, the plaintiff was the owner of a certain promissory note made by Enoch Morgan's Sons for $1,200. About that date he parted with it to a Mr. Grant, of the firm of Grant & Ascough, by indorsing it in the usual way. It appears by the plaintiff's testimony that Grant wanted to borrow money of him and applied to him for a loan. That plaintiff handed Grant this note, intending him to use it, that he might procure it to be discounted in his bank, and from the proceeds of the discount the plaintiff intended to loan Grant money.

Grant took the note, and on the 22d day of November, 1870, transferred it to the defendants. On that day there became and was due from Grant's firm to the defendants the

sum of $2,787.50. The note was given by Grant to the defendants in lieu of so much money and was by them accepted as money.

The defendants were *bona fide* holders for value before maturity and without notice.

The plaintiff brings trover against the defendants, the indorsees of Grant & Ascough, for the alleged conversion of the note by the defendants, on the theory that Grant diverted the note from the purposes to which the plaintiff intended it to be applied, and that the note is tainted with this faultiness in the hands of the defendants. A demand and refusal, &c., is also alleged,

The answer, besides a general traverse, avers the rights of the defendants to the note as innocent holders, and sets out the circumstances attending their obtaining it.

The learned justice at the trial dismissed the complaint, the plaintiff's exception to be heard in the first instance at the general term.

I. The nonsuit was properly directed, because the plaintiff failed to prove a diversion of the note by Grant or by Grant & Ascough.

The holder of negotiable paper is never obliged to show under what circumstances and for what value he became owner, or in other words to do aught else than rely upon the protection given him by the commercial law, except in cases where the maker or other party sought to be held liable shows that he parted with the specific paper under duress or by some fraud practiced upon him. When this is unequivocally shown, the presumption of innocence is so far rebutted as to raise a contrary presumption that the holder has received the paper as a cover for the wrong-doer, and hence the duty devolves upon the holder of establishing the *fact* that he is an innocent holder (*Case* agt. *Mechanics' Bkng. Assn.*, 4 *N. Y.*, 166 ; *First Natl. Bank, &c.*, agt. *Green*, 43 *N. Y.*, 298).

In this case there was no diversion of the note. *It was loaned to Grant*, for the transaction is tantamount to that.

McGuire agt. Sinclair.

The plaintiff swears that Grant was to have the proceeds of it; and if he so intended, he virtually intended that Grant should have the note itself.

It will be further observed that the plaintiff made title to the note in Grant, with the express design of relinquishing all right to it himself, and without any specific appropriation of the proceeds to any other purpose than Grant's own use. It was in the contemplation, therefore, of the plaintiff actually to part with all right to and control over the note.

In this respect, this case differs from the familiar cases in the books, in which the presumption in favor of an innocent holder is rebutted and he is called upon to show how he became possessed of the paper.

II. The nonsuit was properly ordered, *because the plaintiff had fully shown by the evidence on his side all that the defendant by the most rigid enforcement of the rule could have been called upon to show*, viz., that the defendants procured the note before maturity for value and without notice of any alleged equities of the plaintiff.

John Sinclair, a defendant, and a witness for the plaintiff, testified that he received the note from Grant, 22d November, 1870. That on that day Grant's firm owed the defendants money on account of contracts, and that the note was taken in lieu of the money (*i. e.*, in payment). It is true, he also says that he thinks the note was taken as security; but the examination will show that he used this term unadvisedly, and without apprehending its technical signification, for he explains:

"Q. You say, in your direct examination, that Grant & Ascough gave you this note as a security. Please explain that?"

"A. They gave it to us *instead of so much money*, and we accepted it as such."

It also appears in evidence that defendants never heard of any claim to the note of plaintiff until December 6th, 1870.

It thus appears that two weeks before the plaintiff asserted claim to the note, and before the defendants even were aware of such a claim, they took it as the equivalent and in satisfaction and payment of a sum of money due them on that day by Grant & Ascough, or, in other words, in extinguishment of the debt.

Notwithstanding the discordant authorities upon the subject (by reason of which it may still be regarded, in the abstract, as an open question), it may, for all the purposes of this case, be admitted that taking a note, as an additional or collateral security for a pre-existing debt, does not make a person a holder thereof for value, within the meaning of the law-merchant. The well-known cases of *Coddington* agt. *Bay*, *Stalker* agt. *McDonald*, and *McBride* agt. *Farmers' Bank*, although contrary to the later rulings of courts of other states and of the United States supreme court, are not as yet modified or reversed, and must doubtless be held to be the law of this state.

But the rule evolved from those cases, and above mentioned, has no application here, for the principle is established beyond dispute that *the acceptance of a note or bill by a creditor, in satisfaction of a debt due him, is a negotiation by the debtor for value.* The creditor parts with his right to pursue his original demand, and would be remediless if he could not resort to the note (*Purchase* agt. *Mattison*, 3 *Bosworth*, 310; *White* agt. *Springfield Bank*, 2 *Sandf.*, 222; *Works* agt. *Smith*, 4 *Duer*, 362; *Youngs* agt. *Lee*, 12 *N. Y.*, 551; *Brown* agt. *Leavitt*, 31 *N. Y.*, 113; *Bank of Salina* agt. *Babcock*, 21 *Wend.*, 499).

The case at bar falls within the rule of the cases last cited, and therefore judgment upon the nonsuit should be ordered for the defendant.

MONELL, *J.*—The only question in this case was whether the defendants were the holders of the note for value.

They obtained it before maturity from persons who had

McGuire agt. Sinclair.

the lawful custody of it, and without notice that the delivery to them was a diversion from the purpose for which it was given to such persons by the plaintiff; so that, if the defendants gave value for it, their title cannot be disturbed.

The only evidence touching the question was that of one of the defendants. He testified that the defendants received it from Grant & Ascough, who were at the time indebted to the defendants in a much larger amount, and took it in lieu of money. Being asked, "did they give it to you in payment of the moneys due from them, or as security therefor?" he answered, "as security, I should say." Afterward, when asked to explain his answer, that it was given as security, he said, "they gave it to us instead of so much money, and we accepted it as such."

There was, perhaps, sufficient conflict in this evidence to have made it proper for the jury to determine whether the note was taken in part payment of an antecedent debt, or merely as security for its payment; and had a request to submit such question to the jury been refused, it would, I think, have been error.

No such request, however, was made; and the objection cannot be taken now that the case should have gone to the jury, upon that or upon any other question of fact there might be in the case (O'Neill agt. James, 43 N. Y. R., 84, 93).

The decision is, therefore, to be made as if the fact was undisputed that the defendants took the note toward payment of the debt of Grant & Ascough. Such a consideration made the defendants bona fide holders.

But even if the decision below was made upon the weight of the evidence being in favor of such holding, it would meet with our approval. It is quite clear that the defendants did take the note as payment, and not as a mere security.

The exceptions should be overruled and judgment ordered dismissing the complaint, with costs.

Justices CURTIS and SEDGWICK concur.